IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| AVERY C. VANDERHURST, * | |
| Plaintiff, * | |
| v. * | Case No.: PWG-13-2143 |
| NEIL MOHARDT, * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Four police officers arrested Plaintiff Avery C. Vanderhurst on July 31, 2012 and, in the process of bringing him under control so that he could be handcuffed, one of them deployed a taser against him two or three times. At the police station following the arrest, Corporal Neil Mohardt and another officer conducted a cavity search.[1]  Believing these acts to violate 42 U.S.C. § 1983 and the Eighth Amendment[2] to the United States Constitution, Plaintiff (then *pro se*) filed suit against Corporal Neil Mohardt on July 24, 2013. Compl. 4–5, ECF No. 1.

---

[1] In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).

[2] Given that "the Eighth Amendment . . . is specifically concerned with the unnecessary and wanton infliction of pain *in penal institutions*," as opposed to during arrest, *see Whitley v. Albers*, 475 U.S. 312, 327 (1986) (emphasis added), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 36–38 (2010), and "[a]n excessive force claim against police officers under 42 U.S.C. § 1983 is to be judged under Fourth Amendment jurisprudence," *J.W. v. Carrier*, No. MJG-13-2386, 2015 WL 2085438, at \*4 (D. Md. May 4, 2015) (citation and quotation marks omitted), I construe Plaintiff's claim as one for a violation of the Fourth Amendment of the United States Constitution. *See* Fed. R. Civ. P. 1.

Defendant has moved for summary judgment, ECF No. 29, and the parties[3] fully briefed the motion, ECF Nos. 29-1, 32, 33, 34.  A hearing is not necessary.  *See* Loc. R. 105.6.  Because there is no genuine dispute that it was not Corporal Mohardt who used the taser, summary judgment in Defendant's favor is appropriate on the excessive force claim.  However, Plaintiff will have the opportunity to amend to name the proper defendant for this claim.  Additionally, the cavity search was justified and reasonable, and therefore summary judgment in Defendant's favor is appropriate on that claim as well.

## I.     STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt."  *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin*, *v. Baxter Healthcare Corp.*, 197 F. Supp. 2d 669, 671 (D. Md. 1999).  And, the existence of only a "scintilla of evidence" will not defeat a motion for summary judgment.  *Anderson v. Liberty*

---

[3] Plaintiff, who filed his Complaint *pro se*, sought appointment of counsel.  ECF No. 19.  He now is represented and opposed Defendant's motion with the assistance of his pro bono counsel. ECF Nos. 20, 24.

*Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*

Relevantly, when the nonmoving party does not oppose summary judgment as to one or more claims, "those facts established by the motion" with regard to those claims are "uncontroverted."  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).  Nonetheless, the moving party still must demonstrate that, based on those facts, that party is entitled to judgment as a matter of law, because "[t]he failure to respond to the motion does not automatically accomplish this."  *Id.*

## II.   DISCUSSION

### A.  Use of Taser

"[T]o hold an officer personally liable for violation of the Fourth Amendment, the plaintiff must at a minimum be able to demonstrate that the officer actually terminated [his or] her freedom of movement by means of the alleged excessive force."  *Schultz v. Braga*, 455 F.3d 470, 483 (4th Cir. 2006).  Plaintiff claims that Corporal Mohardt "shot [him] with a taser 3 times" while arresting him on July 31, 2012.  As he sees it, the use of force was excessive, given that Plaintiff "was found not guilty of resisting arrest." Compl. 4.  Defendant moves for summary judgment, insisting that he "neither possessed nor used a taser during Plaintiff's arrest," and in any event, "the use of force did not violate Plaintiff's constitutional rights because it was objectively reasonable as a matter of law."  Def.'s Mot. ¶ 3.

In support, Defendant provides affidavits from Corporal Mohardt and Sergeant John Mullaney, which state that Defendant "was not taser certified, nor was he assigned or issued a taser," and "[a]t no time during the subject incident did Cpl. Mohardt handle, touch or use a

3

taser." Def.'s Mem. 9 (citing Mullaney Aff. ¶¶ 3, 5, Def.'s Mem. Ex. 6, ECF No. 29-8; Mohardt Aff. ¶ 22, Def.'s Mem. Ex. 4, ECF No. 29-6); *see* Mullaney Aff. ¶ 7 ("The Use of Force Report specifically excludes Cpl. Mohardt in connection with the use of a TASER during the incident involving Mr. Vanderhurst."). Certainly, Plaintiff testified that Defendant tased him three times and that he saw Defendant "tase [him] the first two times." Vanderhurst Dep. 27:11–18, 96:8–11, Def.'s Mem. Ex. 1, ECF No. 29-3. Yet, according to Defendant, when Plaintiff was deposed, he described Defendant as "Caucasian, 5'9" to 5'10" tall, medium build, with red hair and wearing a brown baseball cap." However, "Cpl. Mohardt is 5'8", does not have red hair, and was not wearing a brown baseball cap at the time of the incident." Def.'s Mem. 9 (citing Vanderhurst Dep. 96:8–16, 131:2–8; Mohardt Aff. ¶ 23). In response, Plaintiff acknowledges Defendant's "claim[] that he did not deploy the taser," and Sergeant Mullaney's affidavit stating that "Defendant was not TASER-certified." Pl.'s Opp'n 2 n.1. Rather than providing any evidence to rebut these assertions, Plaintiff seems to concede that he has named the wrong defendant, stating that "[i]t is likely the case that Plaintiff simply did not know the name of the officer Plaintiff describes in his deposition as having red hair." *Id.* Because there is no genuine dispute of material fact that it was not Defendant who used a taser on Plaintiff, Defendant is entitled to summary judgment on Plaintiff's excessive force claim. *See* Fed. R. Civ. P. 56.

Nonetheless, a genuine dispute exists as to the reasonableness of the use of force, as Plaintiff testified that he did not resist arrest, making any force unnecessary, Vanderhurst Dep. 82:15 – 85:3, and Defendant provided an affidavit justifying the use of force based on Plaintiff's criminal history, Mohardt Aff. Moreover, although Plaintiff does not seek either leave to amend to name the proper defendant pursuant to Rule 15(a)(2) or to pursue discovery to identify the proper defendant pursuant to Rule 56(d)(2), it appears that Plaintiff readily could identify the

proper defendant, as the Use of Force Report referenced in Sergeant Mullaney's affidavit likely identifies the individual who used the taser. *See* Mullaney Aff. ¶ 7. Indeed, Defendant does not deny that "one of the [arresting] officers deployed the probes of his taser into Plaintiff's back." Def.'s Mem. 13. Rather, Defendant denies only that *he* was the officer who deployed the taser. Therefore, Plaintiff will be granted until July 22, 2015 to amend his Complaint to name the proper defendant.

### B. Strip Search

Plaintiff also claims that Corporal Mohardt "conduct[ed] a cavity search of [Plaintiff's] rectum with a flashlight." Compl. 4. Defendant argues that he "did not violate Plaintiff's constitutional rights because there was justification for initiating the search, and the place, scope and manner of the search was reasonable." Def.'s Mot. ¶ 4. Plaintiff does not address this argument. *See* Pl.'s Opp'n. Consequently, the following facts are uncontroverted, *see Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993):

> Plaintiff . . . is a known distributor of controlled dangerous substances . . . .
>
> . . .
>
> [Another individual whom the officers detained] admitted to possession of a rock of crack cocaine in his pants pocket. . . . and . . . admitted to purchasing the rock from Plaintiff while he was riding inside Plaintiff's vehicle. . . . [P]robable cause had been established for Plaintiff's arrest.
>
> . . .
>
> Based on Cpl. Mohardt's experience and training as a police officer, he was aware that individuals who are arrested for drug related charges often conceal drugs beneath their testicles or inside their anus. Further, Cpl. Mohardt was aware Plaintiff had previously been arrested in 2005 for drug related charges, and that drugs were found inside his anus at that time. Based on this, the strip search was conducted based on the reasonable suspicion that Plaintiff may be concealing drugs inside his anus or beneath his testicles.
>
> Plaintiff was taken into a cell at the back of the holding cell area of CPU [the Central Processing Unit]. The cell was the last in a line of cells, had four

> walls and a door, and had a small window which overlooked a courtyard that was not accessible to people. The cell was located at the end of a hallway, which was a dead-end. In other words, there would be no foot traffic going past the door. When Plaintiff was inside the cell for the strip search, he was not wearing handcuffs.
>
> Cpl. Mohardt recalls that he and Officer 2005 requested assistance from male corrections officers to be present in the vicinity of the strip search in order to provide backup in the event Plaintiff became violent. They requested assistance based upon the struggle they had just encountered attempting to arrest Plaintiff, Plaintiff's violent history with police, and the fact that Plaintiff was significantly larger than the two of them. Furthermore, since the officers are not permitted to carry their firearms or other protective instruments into CPU, they were cognizant of the fact that they were handicapped in their ability to defend themselves or to subdue Plaintiff in the event he became violent. At the scene of the arrest, Plaintiff had already demonstrated great physical ability in resisting the combined efforts of four police officers to place him under arrest and get him handcuffed. As such, safety was an important concern during the strip search, which is why the officers requested backup from the corrections officers. Cpl. Mohardt also perceived that the presence of these corrections officers would be a deterrent to any notion Plaintiff may have had about becoming violent with them.
>
> Cpl. Mohardt does not recall how many male corrections officers assisted by standing nearby as the strip search was conducted, but he is confident that there were no more than three.
>
> During the strip search, Plaintiff was directed to remove one article of clothing at a time and hand it over for inspection. Plaintiff was compliant and proceeded until he was completely naked. Plaintiff was then instructed to lift his testicles, as well as to bend over and spread his butt cheeks, and no contraband was observed. Plaintiff was then told he could get dressed and the strip search was concluded. At no time was a flashlight ever requested or used during the strip search, nor was Plaintiff ever touched by anyone.

Def.'s Mem. 10, 14–16 (citing Mohardt Aff. ¶¶ 16–20).

The Fourth Circuit presented the "well-settled principles of constitutional law [that courts apply] in considering the reasonableness of the search of [an arrestee's] genital area" in *United States v. Edwards*, 666 F.3d 877, 882-84 (4th Cir. 2011).

> An officer may search the person of an arrestee . . . without a search warrant based on the need to disarm the arrestee and to discover evidence. *Illinois v. Lafayette*, 462 U.S. 640, 644–45 (1983). However, all searches, including searches incident to an arrest, must be reasonable to withstand Fourth Amendment scrutiny. *Amaechi* [*v. West*], 237 F.3d [356,] 361 [(4th Cir. 2011)].

6

*Edwards*, 666 F.3d at 882–83.  Courts apply "'a flexible test'" that the Supreme Court developed in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), "to determine the reasonableness of a broad range of 'sexually invasive searches,' which included but was not limited to strip searches." *Id.* at 883 (quoting *Amaechi*, 237 F.3d at 361 n.11 & 364 n.14 (citing *Bell*, 441 U.S. 520)).

> Under the *Bell* framework for determining the reasonableness of sexually invasive searches, the need for a particular search is balanced against the invasion of personal rights caused by the search. 441 U.S. at 559. Pursuant to *Bell*, we examine the search in its complete context and consider the following factors: 1) the place in which the search was conducted; 2) the scope of the particular intrusion; 3) the manner in which the search was conducted; and 4) the justification for initiating the search. *Id*.

*Edwards*, 666 F.3d at 883.  The place where the search is conducted is a paramount consideration, and the Fourth Circuit has "'repeatedly emphasized the necessity of conducting a strip search in private.'" *Id.* (quoting *Amaechi*, 237 F.3d at 364; citing *Polk v. Montgomery Cnty.*, 782 F.2d 1196, 1201–02 (4th Cir. 1986)).

> While every strip search need not be conducted in a private holding cell to adequately safeguard a suspect's privacy interests, we consider whether a sexually invasive search could have been viewed by others, and whether it was in fact viewed by others, in our analysis of the reasonableness of the search.

*Id.* (citing *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir. 1981)).  The court also considers the arrestee's safety and whether it would cause the arrestee to fear for his safety. *Id.* at 884.

Here, the officers conducted the search in relative privacy:  They searched Plaintiff within a private holding cell at the end of a hallway where no one would be passing the door, and the only individuals present were the two police officers conducting the search and a few correctional officers who were present to ensure their safety.  Given Plaintiff's prior criminal record and the fact that a previous strip search incident to arrest had revealed contraband concealed in Plaintiff's anus, the justification for initiating the search was reasonable.  Likewise, the scope of the search, which involved having Plaintiff remove all of his clothes and expose his

anus, was reasonable. The manner of the search also was reasonable, as the officers did not touch Plaintiff. Further, Plaintiff does not dispute Defendant's assertion that the officers did not use a flashlight, even though Plaintiff previously alleged use of a flashlight in his Complaint and testified that they used a flashlight but did not touch him. *See* Vanderhurst Dep. 108:3 – 109:7. Finally, the search did not endanger Plaintiff in the least. Therefore, the strip search was reasonable and not in violation of the Fourth Amendment.[4] *See Edwards*, 666 F.3d at 882–84. Summary judgment in Defendant's favor is appropriate on Plaintiff's claim based on the strip search.

### III. CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 29, IS GRANTED. However, with regard to the excessive force claim only, Plaintiff will be offered the opportunity to amend his Complaint on or before July 22, 2015 to name the proper defendant.[5] Should be decline to do so, then the case will be terminated with prejudice.

A separate Order will issue.

Date: June 22, 2015                                      /S/
                                                  Paul W. Grimm
                                                  United States District Judge

lyb

---

[4] Because I find that the undisputed facts show that Defendant did not deploy a taser against Plaintiff and the search was reasonable, I need not address Defendant's qualified immunity argument.

[5] Since Corporal Mohardt is the only defendant, the amended complaint will have to be served on any newly-added defendant. *See* Fed. R. Civ. P. 5(a)(1)(B) (requiring service of all pleadings); Fed. R. Civ. P. 21 (misjoinder is not grounds for dismissal). I express no view as to whether the relations-back doctrine would apply to the amended complaint. *See* Fed. R. Civ. P. 15(c)(1).